## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT TOLEDO

| | |
|---|---|
| **MICHAEL MORTIMORE,** | Case No. |
| Plaintiff, | Judge |
| v. | **COMPLAINT FOR DAMAGES** |
| **LOANDEPOT.COM, LLC,** | **JURY DEMAND ENDORSED HEREON** |
| Defendant. | |

Plaintiff Michael Mortimore, through counsel, for his *Complaint for Damages* against Defendant loanDepot.com, LLC, states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Michael Mortimore ("Mortimore" or "Plaintiff") is an owner of residential real property, located at and commonly known as 14864 Township Rd. 215, Findlay, OH 45840 (the "Home").

2.      Mortimore currently maintains the Home as his primary, principal residence, and has so maintained the Home for all times relevant to the allegations of the Complaint.

3.      On or about February 16, 2022, Mortimore executed a promissory note in the amount of $235,111.00 (the "Note") as well as a mortgage on the Home that secures the Note (the "Mortgage") (collectively, the "Loan"). *See*, a copy of the Loan documents attached as **Exhibit 1**.

4.      Defendant loanDepot.com, LLC ("loanDepot" or "Defendant") is a foreign limited liability company incorporated under the laws of the State of Delaware that maintains its headquarters and principal place of business at 6561 Irvine Center Drive, Irvine, CA 92618.

5.      Defendant is the original creditor of the Loan and has serviced the Loan at all times relevant to the causes of action in this Complaint.

6.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

7.     This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

8.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

9.     This action is filed to enforce statutory provisions of RESPA, as well as regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X").

10.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

11.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 Fed. Reg. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

12.     Mortimore asserts claims for relief against Defendant for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

13.     Defendant is a mortgage servicer as defined by RESPA and Regulation X. 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2(b).

14.     The Loan is a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

15.     The Loan is not a "reverse mortgage transaction" as defined by RESPA and Regulation X. 12 C.F.R. § 1024.31; see 12 C.F.R. § 1026.33(a) (Regulation Z).

16.     Defendant is subject to the requirements of RESPA and Regulation X, and it does not qualify for the exception for "small servicers"—as defined by 12 C.F.R. § 1026.41(e)(4)—nor for the exemption for a "qualified lender"—as defined by 12 C.F.R. § 617.7000.

17.     The Loan is secured by the Home which is Mortimore's principal residence. 12 C.F.R. § 1024.30(c)(2).

18.     Mortimore has a private right of action under RESPA and Regulation X pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

19.     Mortimore also asserts a statutory claim against Defendant for violations of the Residential Mortgage Lending Act, R.C. 1322.01, *et seq.* (RMLA).

## STATEMENT OF FACTS

### FHA Mortgages and the Regulations of the HUD Secretary

20.     Every residential mortgage loan that is insured by the Federal Housing Administration ("FHA"), including the Loan, contains substantially similar contractual provisions requiring lenders to comply with the rules and regulations promulgated by the Secretary ("Secretary") of the United States Department of Housing and Urban Development ("HUD"). Specifically, those security instruments provide, with substantial uniformity, as follows:

(a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

* * *

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to

3

require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

*See*, Exhibit 1.

21.     The Secretary has the authority to promulgate regulations concerning the loss mitigation options available to borrowers in default on their FHA-insured mortgage obligations. That statutory provision reads:

> Upon default or imminent default, as defined by the Secretary of any mortgage insured under this subchapter, mortgagees shall engage in loss mitigation actions for the purpose of providing an alternative to foreclosure (including but not limited to actions such as special forbearance, loan modification, preforeclosure sale, support for borrower housing counseling, subordinate lien resolution, borrower incentives, and deeds in lieu of foreclosure, as required, but not including assignment of mortgages to the Secretary under section 1710(a)(1)(A) of this title) or subsection (c), as provided in regulations by the Secretary.

12 U.S.C. § 1715u(a).

22.     The Secretary's rules and regulations relative to the servicing of FHA-insured mortgage loans for single family homes—such as the Mortgage—are set forth in the FHA's *Single Family Housing Policy Handbook 4000.1* ("SF Handbook").

23.     The SF Handbook requires a mortgagee to ensure all mortgages insured by the FHA that are delinquent are serviced in accordance with FHA requirements and all applicable laws. SF Handbook 4000.1 at III.A.2.a.ii, Revision No. 032719, March 14, 2016.

24.     The Secretary and HUD limit mortgagees' rights in the case of payment defaults through their policies pertaining to loss mitigation as contained in the SF Handbook. *See, e.g.,* Mortgage, ¶ 9; SF Handbook at III.A.2.r.ii(C)(1)(a)-(b) (requiring mortgagees to perform a complete review of borrowers' applications for loss mitigation options before proceeding to a foreclosure sale).

25.     Due to the Presidentially-Declared COVID-19 National Emergency, the Secretary and HUD updated the SF Handbook to require mortgagees to review borrowers for certain home retention options without a borrower having to submit a complete loss mitigation application. *See, inter alia,* SF Handbook at III.A.2.o.

26.     One such category of loss mitigation options is referred to as "COVID-19 Recovery Loss Mitigation Options" ("COVID-19 Recovery Options") which were to "provide Borrowers impacted, directly or indirectly, by COVID-19 with options to bring their Mortgage current and *may reduce* the [Principal and Interest ("P&I")] portion of their monthly Mortgage Payment to reduce the risk of re-default and assist in the broader COVID-19 recovery." *See*, SF Handbook at III.A.2.o.iii.(A), *et seq.* (emphasis added).

27.     Mortgagees must review all borrowers for COVID-19 Recovery Options:

(a)  If the borrower was in a COVID-19 forbearance, no later than the earlier of one hundred twenty (120) days of the borrower's completion or expiration of a COVID-19 forbearance plan;

(b)  If the borrower was not in a COVID-19 forbearance, when the borrower is 90 or more days delinquent and the borrower affirms they have been negatively impacted by COVID-19.

*See*, SF Handbook at III.A.2.o.iii.(A)(1)-(2).

28.     Of note, "The COVID-19 Recovery Options are not incentivized for Mortgagees" meaning that, unlike with other loss mitigation options, a mortgagee does not receive any incentive from HUD for offering and entering borrowers into COVID-19 Recovery Options. *See*, SF Handbook at III.A.2.o.iii.(A).

29.     In reviewing borrowers for COVID-19 Recovery Options, the first step in the "waterfall" is to see if a borrower qualifies for a "Standalone Partial Claim" to reinstate their

mortgage and resume making their contractual mortgage payments. *See*, SF Handbook at III.A.2.o.iii.(C)(1).

30.     In reviewing borrowers for COVID-19 Recovery Options, the first step in the "waterfall" is to see if a borrower qualifies for a "Standalone Partial Claim" ("SPC") to reinstate their mortgage and resume making their contractual mortgage payments. *See*, SF Handbook at III.A.2.o.iii.(C)(1).

31.     Mortgagees "***must evaluate*** Owner-Occupant Borrowers impacted by COVID-19 for a COVID-19 Recovery [SPC]." *See*, SF Handbook at III.A.2.o.iii.(C)(1) (emphasis added).

32.     The only eligibility requirements for an SPC are that: (1) The "property is owner-occupied"; and (2) "the Borrower indicates they have the ability to resume making on-time Mortgage Payments" *See*, SF Handbook at III.A.2.o.iii.(C)(1)(a).

33.     In relation to SPCs, Mortgagees must ensure that:

a.  The SPC fully reinstates the mortgage;

b.  Only includes amounts needed to bring the loan current;

c.  The SPC "not exceed [30][1] percent of the unpaid principal balance as of the date of Default at the time of payment of the initial Partial Claim less any previous Partial Claims paid."

*See*, SF Handbook at III.A.2.o.iii.(C)(1)(b).

34.     In calculating the available SPC, a mortgage "must first calculate [30] percent of the unpaid principal balance as of the date of Default" then "then subtract any previous Partial

---

[1] Through Mortgagee Letter 2023-03 HUD increased the available total partial claim available from twenty-five percent (25%) of the unpaid principal balance of a loan as of the date of default to thirty percent (30%) of the unpaid principal balance of a loan as of the date of default. *See*, Exhibit 1.

Claims paid to determine the available Partial Claim amount that can be used for the COVID-19 Recovery Standalone Partial Claim." *See*, SF Handbook at III.A.2.o.iii.(C)(1)(b).

35.     If a borrower does not qualify for a "Standalone Partial Claim", however, "the Mortgagee *must review* the Borrower for the COVID-19 Recovery Modification" ("Recovery Modification"). *See*, SF Handbook at III.A.2.o.iii.(C)(2).

36.     The Recovery Modification is a 360-month Loan Modification, which must include a Partial Claim, if Partial Claim funds are available. The COVID-19 Recovery Modification ***targets*** a reduction in the P&I portion of the Borrower's monthly Mortgage Payment" aiming to achieve a "25 percent reduction to the P&I portion of the Borrower's monthly Mortgage Payment" (the "Target Payment"). *See*, SF Handbook at III.A.2.o.iii.(C)(2)(a).

37.     The ***only*** eligibility requirements for a Recovery Modification are that the mortgagee must ensure that: (1) The borrower indicates they have the ability to make the modified monthly payment; and (2) the borrower resides in the property secured by the mortgage. *See*, SF Handbook at III.A.2.o.iii.(C)(2)(b).

38.     There are a series of steps that a mortgage must apply in attempting to reach the Target Payment and once the Target Payment is achieved, there is no need to utilize any subsequent steps:

a.     "Step 1 – Calculate Partial Claim Availability… The Mortgagee must determine the maximum Partial Claim amount available for a COVID-19 Recovery Modification."

b.     "Step 2 – Arrearages… The Mortgagee must calculate the arrearages… The Mortgagee must ensure that all Late Charges and penalties are waived. Mortgagees are not required to waive Late Charges and penalties, if any, accumulated prior to March 1, 2020."

c.     "Step 3 – Modify the Rate and Term of the Mortgage… The Mortgagee must then extend the term to 360 months and calculate the modified Mortgage Payment. The

interest rate of the modified Mortgage is no greater than the most recent [Primary Mortgage Market Survey ("PMMS") Rate for 30-year fixed rate conforming Mortgages (U.S. average), rounded to the nearest one-eighth of 1 percent (0.125 percent) as of the date the Borrower is offered a COVID-19 Recovery Modification."

d.  "Step 4 – Principal Deferment… If the target payment is not achieved, the Mortgagee must apply the remaining Partial Claim funds, if any, as a principal deferment, to achieve the target payment with the modified Mortgage."

*See*, SF Handbook at III.A.2.o.iii.(C)(2)(c).

39.     Even if the Target Payment is not achieved through the aforementioned steps, "Step 5" requires that "the Mortgagee **must offer** the Borrower **the lowest monthly P&I payment achieved under the COVID-19 Recovery Modification**. If the Borrower affirms that they can make the offered payment, then the Mortgagee must complete that option." *See*, SF Handbook at III.A.2.o.iii.(C)(2)(c).

40.     In short, while a Recovery Modification requires a mortgagee to attempt to achieve the Target Payment, it is not required to achieve the Target Payment or achieve *any reduction* in the P&I portion of a borrower's monthly payment—while a reduction in the P&I portion of a borrower's monthly payment is attempted, it is not *required* in order for a mortgagee to offer a Recovery Modification.

41.     Again, "COVID-19 Recovery Options" are designed to "provide Borrowers impacted, directly or indirectly, by COVID-19 with options to bring their Mortgage current and *may reduce* the P&I" portion of their monthly Mortgage Payment to reduce the risk of re-default and assist in the broader COVID-19 recovery." *See*, SF Handbook at III.A.2.o.iii.(A), *et seq.* (emphasis added).

<u>Defendant's Improper Denial of Eligibility for a Recovery Modification and Partial Claim</u>

42.     Mortimore, like millions of others, was impacted by COVID-19, and, in turn, fell upon financial hardships and defaulted on their obligations pursuant to the Loan.

43.     Defendant initiated foreclosure proceedings against Mortimore and his wife, Brenda Mortimore, on January 26, 2023 in the Court of Common Pleas for Hancock County, Ohio, Case No. 2023 F 00035 (the "Foreclosure").

44.     Mortimore and his wife retained counsel to defend their interests in the Foreclosure.

45.     On August 14, 2023, Mortimore, through counsel, submitted a loss mitigation application with supporting enclosures to Defendant (the "Application"). *See*, a copy of the Application attached as **Exhibit 2**.

46.     On August 25, 2023, Defendant sent correspondence denying Mortimore for a COVID-19 Recovery Modification because "a reduction in payment could not be achieved" (the "Denial"). *See*, a copy of the Denial. attached as **Exhibit 3**.

47.     At no point in the Denial did Defendant indicate that it had reviewed Mortimore for an SPC as required by the SF Handbook.

48.     Had Defendant reviewed Mortimore for an SPC, Mortimore would have qualified for the same and Mortimore had the desire to accept the same and which would have cured the default on the Loan and the ability to resume his monthly payments thereunder.

49.     Regardless, per the SF Handbook, if Defendant deemed Mortimore ineligible for an SPC, it was still obligated to offer a Recovery Modification to Mortimore. Had Defendant offered such a modification, Mortimore had the ability and desire to accept the same and fulfill his payment obligation thereunder which would have cured the default on the Loan.

50.     As the Denial indicated that Defendant failed to review Mortimore for an SPC and improperly claimed that the Recovery Modification required a reduction in the P&I portion of

Mortimore's monthly payments, Mortimore, through counsel, appealed the determination on September 9, 2023 (the "Appeal"). *See*, a copy of the Appeal, attached as **Exhibit 4**.

51.     Mortimore, through counsel, sent correspondence to Defendant dated October 18, 2023, captioned "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to respond properly to an appeal of the denial of loss mitigation options in violation of §1024.41(h)(4) …" ("NOE #1"). *See*, a copy of NOE #1, attached as **Exhibit 5**.

52.     Defendant sent correspondence dated November 16, 2023, in response to the Appeal and NOE #1 (the "NOE #1 Response"). *See*, a copy of the NOE #1 Response, attached as **Exhibit 6**.

53.     Through the NOE #1 Response, Defendant generally stated that no error occurred as alleged through NOE #1 and reaffirmed its claim that Mortimore did not qualify for a Recovery Modification, stating:

> The borrower was not reviewed for the FHA Standalone Partial Claim (FHA-SPC) as a request for a lower payment was included in the hardship letter. The FHA-SPC would not have provided the reduction in payment the borrower stated he needed. If circumstances have changed, we can re-evaluate Mortimore for a modification with a monthly payment of approximately $1,737.15. He would need to call 1-866-970-7105 and speak with a member of our Point of Contact team to request to be reevaluated.

*See*, Exhibit 6.

54.     On November 28, 2023, at the direction of the NOE #1 Response, Mortimore, through counsel, called Defendant and requested that it review Mortimore for an SPC.

55.     Despite Defendant receiving written authorizations allowing it to speak with Mortimore's counsel, Dann Law, on his behalf, Defendant refused to speak with counsel.

56.     On November 29, 2023, Mortimore personally called Defendant to request a review for an SPC.

57.     Defendant again refused to review Mortimore for a FHA Standalone Partial Claim contrary to the SF Handbook.

58.     As a result, Mortimore, through counsel, sent correspondence to Defendant dated December 1, 2023, captioned "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to exercise reasonable diligence in obtaining a complete loss mitigation [application] as required by 12 C.F.R. § 1024.41(b)" at the address Defendant designated for borrowers to send notices of error pursuant to 12 C.F.R. § 1024.35 and requests for information pursuant to 12 C.F.R. § 1024.36 (the "Designated Address") ("NOE #2"). *See*, a copy of NOE #2, along with tracking information for the same, attached as **Exhibit 7**.

59.     Defendant sent correspondence dated January 22, 2024, in response to NOE #2 (the "NOE #2 Response"). *See*, a copy of the NOE #2 Response, attached as **Exhibit 8**.

60.     Through the NOE #2 Response, Defendant admits that it "did not correctly handle the calls we received on November 28, 2023 and November 29, 2023" and it " apologize[d] for the confusion that the calls may have caused." *See*, Exhibit 8.

61.     Defendant further stated through the NOE #2 Response that "[i]f financial assistance is still required, please call 866-970-7105 to discuss possible FHA recovery options." *See*, Exhibit 8.

62.     On February 22, 2024, at the direction of the NOE #2 Response, Mortimore, through counsel, called Defendant and requested that it review Mortimore for an SPC

63.     Despite the acknowledgment of its prior errors through the NOE #2 Response, during the call, Defendant *again* refused to discuss loss mitigation, notably an SPC, with Mortimore's counsel.

64.     As a result, Mortimore, through counsel, sent correspondence to Defendant dated February 8, 2024, captioned "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) and 12 U.S.C.

§ 2605(k)(1)(C) for failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by 12 C.F.R. § 1024.38(b) 1 ;Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to exercise reasonable diligence in obtaining a complete loss mitigation as required by 12 C.F.R. § 1024.41(b)" at the Designated Address ("NOE #3"). A copy of NOE #3 along with tracking information for the same is attached as **Exhibit 9**.

65.     Defendant received NOE #3 at the Designated Address on February 13, 2024. *See* Exhibit 8.

66.     Defendant failed to timely and properly respond to NOE #3 on or before March 27, 2024.

67.     Defendant sent correspondence dated April 11, 2024 requesting an additional fifteen (15) business days in which to respond to NOE #3, but this request for extension was untimely.

68.     Eventually, on or about May 8, 2024, Defendant sent correspondence approving Mortimore for an SPC in the amount of $49,147.38 with Mortimore to resume regular monthly payments on the Loan beginning July 1, 2024. *See*, a copy of the issued SPC, attached as **Exhibit 10**.

69.     Mortimore accepted and executed the SPC and resumed his monthly payments beginning July 1, 2024.

70.     Defendant filed a *Notice of Dismissal of Plaintiff's Complaint* in the Foreclosure on June 4, 2024.

### **IMPACT UPON AND DAMAGES SUFFERED BY MORTIMORE**

71.     Defendant's improper actions caused Mortimore to suffer from actual and proximate damages including, but not limited to:

a. Legal fees, costs, and expenses to submit the Appeal, NOE #1, NOE #2, and NOE #3, in an attempt to have Defendant mitigate the harm caused to Mortimore, to which he did not receive proper responses, as any responses were untimely, contained misinformation and misrepresentations, did not correct errors, were indicative that Defendant failed to perform a reasonable investigation into the same, and/or as the problem continued to persist thereafter;

b. The lost opportunity to obtain an SPC for a lower amount or a Recovery Modification at the PMMS Rate for 30-year fixed rate conforming Mortgages (U.S. average) in or around August 2023;

c. Accrued interest, fees and charges imposed on the Loan including default servicing related fees since the issuance of the Denial for which Mortimore is now personally obligated through the issued SPC or which otherwise negatively impacts any equity in the Home to which he is entitled;

d. Legal fees, costs, and expenses related to the continued defense of the Foreclosure and loss mitigation efforts in relation to the Loan since the issuance of the Denial;

e. Significant delay in the loss mitigation process and rehabilitation of Mortimore's credit;

f. Severe emotional distress driven by Defendant's failure to properly handle its review of Mortimore's eligibility for an SPC or Recovery Modification and continued misrepresentations regarding the same and by justified fear that such blatant indifference to improper actions on would result in the sale of the Home at a foreclosure sale which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

13

## PATTERN AND PRACTICE OF DEFENDANT'S
## VIOLATIONS OF RESPA AND REGULATION X

72.     Defendant's actions are part of a pattern and practice of behavior in violation of Mortimore's rights and in abdication and contravention of Defendant's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

73.     Defendant has numerous consumer complaints lodged against it nationally on the CFPB's consumer complaint database. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints.

74.     Mortimore has reviewed the CFPB's consumer complaint database and has identified narratives asserting that Defendant engaged in similar conduct against other borrowers. In particular, Mortimore has reviewed the fifteen (15) consumer complaints attached hereto and identified as **Group Exhibit 11**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints show conduct which demonstrates that Defendant has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

## COUNT I: VIOLATIONS OF RESPA

## 12 C.F.R. § 1024.41(c)(1) and 12 U.S.C. § 2605(k)

### (Failure to Review for All Loss Mitigation Options Available)

75.     Mortimore repeats and realleges paragraphs 1 through 74 with the same force and effect as though fully set forth herein.

76.     12 C.F.R. § 1024.41(a) provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

77.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(3) provides that if no foreclosure sale is scheduled as of the date a loss mitigation application is

received, the application is considered to have been received more than ninety (90) days before any foreclosure sale.

78.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(3) provides that if no foreclosure sale is scheduled as of the date a loss mitigation application is received, the application is considered to have been received more than ninety (90) days before any foreclosure sale.

79.     If a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then a servicer must, within thirty (30) days of receipt of the application:

(i)  Evaluate the borrower for ***all loss mitigation options available*** to the borrower; and

(ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

12 C.F.R. § 1024.41(c)(1). (Emphasis added).

80.     When Mortimore submitted the Application, there was no foreclosure sale scheduled.

81.     Within thirty (30) days of August 14, 2024, Defendant was to review Mortimore for *all* loss mitigation options available to him.

82.     Mortgagees "***must evaluate*** Owner-Occupant Borrowers impacted by COVID-19 for a COVID-19 Recovery [SPC]." *See*, SF Handbook at III.A.2.o.iii.(C)(1) (emphasis added).

83.     As evidenced through the Denial, Defendant wholly failed to review Mortimore for an SPC despite being required to do so.

84.     Defendant's actions in failure to review Mortimore for all available loss mitigation options, specifically an SPC, pursuant to his complete application, constitute a violation of 12 C.F.R. § 1024.41(c)(1) and 12 U.S.C. § 2605(k)(1)(E).

85.     Defendant's actions resulted in Defendant failing to properly review the Application and further unnecessary delay in the loss mitigation process.

86.     Defendant's actions caused Mortimore to suffer actual damages, as discussed, *supra*.

87.     Defendant's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Mortimore's rights and in abdication of Defendant's obligations under RESPA and Regulation X.

88.     As a result of Defendant's actions, Defendants are liable to Mortimore for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

89.     Additionally, Mortimore requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT II: VIOLATIONS OF RESPA

### 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k)

### (Failure to timely and/or properly respond to NOE #1, NOE #2, and NOE #3)

90.     Mortimore repeats and realleges paragraphs 1 through 74 with the same force and effect as though fully set forth herein.

91.     "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a)

92.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

93.     A servicer must respond to a notice of error by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

94.     A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1) not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error. 12 C.F.R. § 1024.35(e)(3)(i).

95.     "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

96.     A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

97.     NOE #2 and NOE #3 each constitute a notice of error as defined by 12 C.F.R. § 1024.35(a) as each is a written notice from Mortimore that includes his name, mortgage loan

account number, and property address and asserts errors that he believed to have occurred. *See* Exhibits 7 and 9.

98.     Mortimore sent NOE #2 and NOE #3 to Defendant at the Designated Address alleging that Defendant committed errors in failing to exercise reasonable diligence by refusing to speak with Mortimore and counsel about loss mitigation. *See*, Exhibits 7 and 9.

99.     Defendant failed to adequately respond to NOE #2 in violation of 12 C.F.R. § 1024.35(e) as Defendant admitted that it committed errors but failed to correct the errors as it failed to review Mortimore for an SPC, and otherwise failed to issue a Recovery Modification to Mortimore. *See*, Exhibit 8.

100.     Defendant failed to adequately respond to NOE #3 in violation of 12 C.F.R. § 1024.35(e) as Defendant failed to timely and properly respond to NOE #3 and otherwise failed to correct the alleged errors or perform a reasonable investigation into said errors.

101.     While Defendant sent correspondence dated April 11, 2024 requesting an additional fifteen (15) business days in which to respond to NOE #3, this request for extension was untimely and does not absolve Defendant of its failure to timely respond to NOE #3. *See* 12 C.F.R. § 1024.35(e)(3)(ii) ("For asserted errors governed by the time limit set forth in paragraph (e)(3)(i)(C) of this section, a servicer may extend the time period for responding by an additional 15 days (excluding legal public holidays, Saturdays, and Sundays) if, ***before the end of the 30-day period***, the servicer notifies the borrower of the extension and the reasons for the extension in writing [emphasis added]. A servicer may not extend the time period for responding to errors asserted under paragraph (b)(6), (9), or (10) of this section.")

102.     Defendant's failures to properly respond to NOE #2 and NOE #3 by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through NOE #2 and NOE #3 constitute violations of 12 C.F.R. §

1024.35(e) and 12 U.S.C. § 2605(k) and have caused Mortimore to suffer actual damages as detailed, *supra. See Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016) ("This statutory mechanism makes past errors current by requiring servicers to fix errors they find upon reasonable investigation, including by issuing refunds as necessary.").

103.    Defendant's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Mortimore's rights and in abdication of Defendant's obligations under RESPA and Regulation X.

104.    As a result of Defendant's actions, Defendant is liable to Mortimore for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

105.    Additionally, Mortimore requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT III: VIOLATIONS OF THE RMLA

### R.C. 1322.01, *et seq.*

106.    Mortimore repeats and realleges paragraphs 1 through 74 with the same force and effect as though fully set forth herein.

107.    On December 22, 2017, Ohio Governor John Kasich ("Kasich") signed into law Ohio House Bill 199 ("HB 199"), which made significant changes to the former Mortgage Brokers Act, R.C. 1322.01, *et seq.*, HB 199 substantially broadened the scope of the statute, now renamed the Residential Mortgage Lending Act, to apply to mortgage lenders.

108.    On December 19, 2018, Kasich signed into law Ohio House Bill 489 ("HB 489"), to again broaden the scope of the RMLA to apply to mortgage servicers. HB 489 now defines "mortgage servicer" and inserts the term into sections throughout Chapter 1322. HB 489's title specifically "require[s] registration of mortgage loan servicers."

109.    Defendant is subject to the requirements of the RMLA and does not qualify for the exemptions listed in R.C. 1322.04.

110.    "No person ... shall act as a ... mortgage servicer ... without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a ... mortgage servicer ... in this state." R.C. 1322.07(A).

111.    Defendant is a mortgage servicer as it is an entity that "for itself or on behalf of the holder of a mortgage loan, holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement including, when applicable, the receipt of funds from the mortgagor to be held in escrow for payment of real estate taxes and insurance premiums and the distribution of such funds to the taxing authority and insurance company." R.C. 1322.01(BB).

112.    Defendant, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

113.    Defendant is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued it a certificate of registration, License No. RM.804269.000. R.C. 1322.01(HH).

114.    Mortimore is a "buyer" as defined by R.C. 1322.01(I), as he is an individual whose loan is serviced by a mortgage servicer, Defendant.

**(R.C. 1322.40)**

115.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, cannot make false or misleading statements of a material fact or engage in a continued course of misrepresentations. R.C. 1322.40(B).

116.    Defendant violated R.C. 1322.40(B) by falsely representing or misrepresenting to Mortimore that he did not and could not qualify for a Recovery Modification because the P&I portion of his monthly mortgage payment would not decrease under such a modification.

117.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, cannot engage in conduct that constitutes improper, fraudulent, or dishonest dealings. R.C. 1322.40(C).

118.    Defendant violated R.C. 1322.40(C) by engaging in improper and dishonest dealings by refusing to review Mortimore for an SPC as required by the SF Handbook and by failing to provide Mortimore with a Recovery Modification as required by the SF Handbook and by subsequently misrepresenting to him that he did not and could not qualify for the same because the P&I portion of his monthly mortgage payment would not decrease under such a modification.

119.    Defendant violated R.C. 1322.40(C) by engaging in improper and dishonest dealings by refusing to evaluate Mortimore for loss mitigation options when he and his counsel contacted Defendant as directed by Defendant's communications.

120.    As a result of Defendant's conduct, Defendant is liable to Mortimore for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.52.

**(R.C. 1322.45)**

121.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322, et seq., is required to comply with all duties imposed by other statutes or common law and:

> (2)    Follow    reasonable    and    lawful    instructions    from    the    buyer;
> (3)    Act    with    reasonable    skill,    care,    and    diligence;    [and,]
> (4) Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan[.]

R.C. 1322.45(A).

122.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322 cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

123.    Defendant violated R.C. 1322.45(A)(2), (3), and (4) by failing to review Mortimore for eligibility for or to otherwise grant Mortimore's requests for COVID-19 Recovery Options, specifically for an SPC or Recovery Modification, pursuant to the applicable guidelines, which resulted in Defendant improperly denying him for the same.

124.    Defendant violated R.C. 1322.45(A)(2), (3), and (4) by refusing to evaluate Mortimore for loss mitigation options when he and his counsel contacted Defendant as directed by Defendant's communications.

125.    Defendant violated R.C. 1322.45(A)(3) and (4) by failing to act with reasonable skill, care, and diligence and in good faith and with fair dealing through its refusal to evaluate Mortimore for an SPC, its refusal to issue Mortimore a Recovery Modification as required by the SF Handbook, and by subsequently misrepresenting to him that he did not and could not qualify for a Recovery Modification because the P&I portion of his monthly mortgage payment would not decrease under such a modification.

126.    Defendant violated R.C. 1322.45(A)(3) and (4) by failing to act with reasonable skill, care, and diligence and in good faith and with fair dealing when handling Mortimore's notices of errors, as discussed, *infra*.

127.    As a result of Defendant's conduct, Defendant is liable to Mortimore for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.52. R.C. 1322.45(D).

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff Michael Mortimore respectfully requests that this Court enter an

Order granting Judgment against Defendant loanDepot.com, LLC, as follows:

A.    Actual damages in an amount to be determined at trial for the allegations
      contained in Counts One through Three;

B.    Statutory damages of Two Thousand Dollars ($2,000.00) per violation of
      RESPA as contained in Counts One and Two for a total of Six Thousand
      Dollars ($6,000.00);

C.    Punitive damages to the extent allowed by law for the allegations
      contained in Count Three;

D.    Costs and reasonable attorneys' fees as to Counts One through Three; and,

E.    Such other relief which this Court may deem appropriate.


/s/ *Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith, Jr. (0097147)
**Dann Law**
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Michael Mortimore*

## JURY DEMAND

Plaintiff Michael Mortimore hereby respectfully demands a trial by jury on all such claims that may be so tried.

/s/ *Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith, Jr. (0097147)
**Dann Law**
*Counsel for Plaintiff Michael Mortimore*